Case No. 15-1026 et al., National Federation of the Blind et al. Petitioners v. United States Department of Transportation et al. Mr. Dockery for the Petitioners and Ms. Wright for the Respondents. Good morning. May it please the Court, my name is Kevin Dockery and I am here on behalf of the Petitioners, the National Federation of the Blind, Mark Maurer and Aniel Lewis. Petitioners are challenging a final rule issued by the Department of Transportation that regulates the accessibility of airlines' automated airport kiosks. I would like to begin by making two brief points on the merits of our challenge that I hope we will be able to address in more detail before addressing the threshold question related to the reasonable grounds for the timing of our challenge. The first point is that our position is that the final rule is arbitrary and capricious under the Administrative Procedure Act because it denies blind travelers the opportunity to access information and services offered by airlines with the same level of independence as sighted travelers as required under the Air Carrier Access Act. The second point is that the primary obstacle to equal access stems from Respondents' determination that only 25% of kiosks must be made accessible to the blind because of the costs airlines will incur to purchase new kiosks. We make three alternative arguments addressing that issue, but they each point to a common problem with the rulemaking, and that is that the cost-benefit analysis performed by the agency to justify the final rule finds no support in the text of the Air Carrier Access Act, Section 504 of the Rehabilitation Act, or Respondents' prior rulemakings under the Air Carrier Access Act. With respect to reasonable grounds, 49 U.S.C. Section 461.10, a direct review provision in the Federal Aviation Act, provides that petitions for review of Respondents' orders must be filed within 60 days of the order, but that a reviewing court may permit filings after the 60-day period where there are reasonable grounds for the delay. If this case doesn't satisfy the reasonable grounds standard, then it's difficult to imagine one that will. Although the standard is not clearly defined in this Court's prior opinions, your Honors will look in vain to find any of the common touchstones of unreasonable conduct in this record. A significant delay here, if 461.10 applies, our petition was filed only nine days late. Prejudice to the opposing party. But have we ever found mistake about the law by a petitioner to be reasonable ground? No, your Honor, this Court has not found that. That's the issue here on reasonable grounds. Can we back up a little bit? I thought the threshold issue here was you're before us on a petition for mandamus, right? That's one of the petitions before this Court. Yeah, that's a very, very high bar. How do you surmount that bar? So the position that we're in, we understand or we've read the Court's recent opinion in the New York State Republican Committee case. It's not helpful to you, right? It's not helpful. We understand the similarity in the direct review provision under the Investment Advisors Act and the one here. And we understand that this Court is unlikely to reach a different interpretation of this direct review provision than the one at issue in that case. But the New York State Republican case is not controlling as to reasonable grounds. That issue was not addressed. Right there, they had to find grounds for equitable tolling, which is a higher hurdle. And so the question is here, I guess, and that's why you focused right away on reasonable grounds, is can we at least be here in the Court of Appeals, reasonable grounds for not having done it promptly. In New York Republicans, we said, you know, if there's uncertainty, file a protective petition. That wasn't done here. So I'm interested in hearing your reasonable grounds distinction. One of the things we said in New York Republicans was, you know, you should have known how hard was that to the extent that there's uncertainty. And so you were saying only nine days late. So I guess there are four factors, right? We were nine days late, very short delay. There's no prejudice, no claim of it by the respondents. This was certainly not in bad faith. There's no allegation of that. And this wasn't a tactical delay. The fourth piece, and maybe this fits into the good faith question, is our legal analysis. And what we did was reasonable.  The district court judge, in dealing with this very issue, really grappled with the case line. What she did was describe two parallel lines of cases. And essentially which court you ended up in, depending on which line of case line you followed. You had an investment company institute in the New York case on the one hand, and you had safe extensions on the other. The district court concluded that these were reconcilable, but its thorough examination of the case line, the great lengths to which the district judge went in finding them to be reconcilable, demonstrate that there wasn't some clear signal that we missed here. So I can't deny that there was any doubt that we were proceeding properly. But we didn't blow through a stop sign. And it's important to note that the district court did end its opinion by noting that we had a colorable argument for filing in the district court in the first place, which is simply another way of stating that we had reasonable grounds for doing what we did. I keep coming back. I mean, obviously in the New York case it relied on investment whole investment company, right? Right. And the language that caught my eye is in the New York case we said, the investment company presumption is not new and should not have caught plaintiffs unawares. So, I mean, one reading of this is you just made a mistake. You made a litigation mistake. You should have gone elsewhere. And the question is, do we forgive those sorts of mistakes, right? I think this court does or should, particularly given the absence of any of the other indications of unreasonable conduct, prejudice in particular. The important thing to understand is that safe extensions, I think that the role of safe extensions in leading us astray is important to understand here, that that opinion provided a description of how to define order in 46110. We followed it. We ended up in the wrong place. And, in fact, this court, while this case has been pending, issued another decision in security point holdings affirming that the definition of the APA definition of order applies to section 46110. I would like to turn back to the merits question before my time runs out. As I mentioned, the primary obstacle to independent access to respondents, the primary obstacle to independent access created by respondents' final rule is the limitation on the percentage of kiosks that need to be made accessible. And that was reached through a cost-benefit analysis that is not supported by the Air Carrier Access Act, the Rehabilitation Act, the agency's prior practice, or even this final rule as it relates to website accessibility. At Joint Appendix 19, there's a description of what constitutes an undue burden analysis with regard to airline websites, and it's clear from reading the final rule that that was not done with respect to kiosks. It's curious to me that there's an air of unreality about the merits in this case in the sense that it sounds like the government is planning to comply within ten years or something. Ten years, yes. And the technological question, the ground is going to shift way before that. It's surprising to me actually already that someone's iPhone doesn't give them an ability to have adaptive access to these terminals. If you could just tell us a little bit about why this is such an issue. So I think this is a perfect example of why access is needed now. Technology changes fast, and if access isn't given at this point, then we're waiting for the next thing. So the ten-year lead-in period, which is not being challenged, or which we are not challenging in this case, is problematic, particularly when it's combined with the 25% cap, because we don't know when that cap will be reached. It's not a cap, really. It's at least 25%. Right. So it's 25% threshold, maybe more, maybe not. Benchmark, right. So access is needed now because there is not this additional technology to provide it. See, I'm out of time. All right. We'll give you a couple minutes to reply. Ms. Wright. Good morning. Abby Wright on behalf of the Department of Transportation. I think I'd like to start with discussing safe extensions and security point holdings. Those were characterized as a sort of competing line of cases, and I don't think they really are, and they didn't address the question in this case. Those cases, this court was looking at whether agency action was a final order, especially in the safe extensions case, and so looked to the APA for that question, but certainly did not in any way suggest that the definition of the APA regulation or order, that distinction, had any role in 46-110. Although, you know, the district court was, it's the definition for the APA. It's the same law. District court struggled with it a little bit, and, you know, New York Republicans, we had four years later they decide to file, you know, and is there equitable tolling here, you know, reasonable grounds. It's a little, it's way lower hurdle, and what is the prejudice? It's a lower hurdle, I think, in some ways, but I think it's a far, it's a less far-ranging inquiry. I mean, the statute says reasonable grounds. It doesn't talk about prejudice. It doesn't talk about some of the things that are considered with respect to equitable tolling. So I would say that this court should focus on their grounds that they've advanced, which is a mistake of law. As Judge Griffith alluded to, this court has never held that a mistake of law could constitute reasonable grounds. And if you look at, there's two cases, I believe, in this court, and one in the Eighth Circuit, where they have found reasonable grounds. And in all of those cases, the agency had done something affirmative to mislead, not on purpose, of course, but to make the plaintiff slash petitioner believe that they needed to either file in district court or that it wasn't. You know, safe extension to the question there was, you know, maybe we'll come back and change this order, which they didn't end up doing, and so the petitioners in that case were out of time because they'd been led to believe that this interim thing was going to go away. And in the Eighth Circuit case, they were told to go to the NTSB, for example. So it's always been a case where the agency has sort of led plaintiffs or petitioners down a path that wasn't appropriate. And is there, could someone else file? I mean, the time is up for everybody, right? So there's a couple of avenues. Obviously, air carriers, who it's enforced against, could challenge at that point. Under the Air Carrier Access Act, individual travelers can file complaints with the department. The department shall investigate those complaints. And again, I think the rule itself contemplates that DOT will continue to monitor the situation. So if DOT begins to receive complaints regarding access to airport kiosks, you know, additional wait times, trouble finding them, DOT is committed to taking steps to rectify that. So I think there is, going forward, an opportunity for travelers to bring these concerns to DOT's attention, and DOT has said they will take them seriously. I know we don't have the merits before us, but the same question that I asked to Mr. Daugherty I have for you, which is, really? It seems surprising to me that the technology is not actually going available and quickly. It's true that more and more people are using their phones to do a lot of the things that kiosks are doing now. I think probably checking bags is the only thing that might be left that you need to do at that kiosk. And there's not a way of making an interface that just is, you know, get some kid to write an app. Well, from what I understand, and if you look at the regulatory analysis, the software is actually quite complicated. And the other component that DOT talks about in the rule is that some of these kiosks are shared by different air carriers, which makes it extremely complicated. So for a large air carrier, I think, that can do it in-house, as DOT recognized, it may not take that much time to do the software if they've got people that can do it in-house. But for the smaller air carriers who actually share these, sometimes shared with airports as well, that's going to be a complex question and a costly one. But I think Your Honor is right that technology here changes. And so DOT tries to keep up with that with the Air Carrier Access Act. It implemented regulations in 1990 and has done so going forward from there and will take into account whatever complaints it receives and think about new rulemakings, think about enforcement actions as that becomes necessary. If there are no further questions, we would ask that the petitions be dismissed. Thank you. A few brief points in response. First, on the question of whether mistake can be reasonable or mistake and reasonable grounds can fit together here. This court has not held that a mistake or a legal error cannot be reasonable grounds. And I think this is the record on which it should hold that reasonable grounds and mistake law can go together. To the respondent's points about the alternative avenues here, the petitioners, the blind traveling public, don't have another option for challenging this in court. The 60-day period has expired at this point. And the air carriers, quite frankly, are unlikely to be the best advocates for the blind traveling public in this regulation to the extent it comes up in an enforcement proceeding. Those interests are just not aligned. The merits are before this court, and I do want to make a few points about them. And the point that I started out my argument with was that the cost of providing access is a permissible calculation or permissible consideration, but only in the context of an undue burden analysis. And that was not done here. This final rule demonstrates that respondents know what an undue burden analysis is. Indeed, there's a problem of whether the cost analysis is even in the record, right? Correct, yes. The final rule certainly doesn't reveal it, and it's not anywhere in any of the record documents. And for that reason, you would ask that this court find reasonable grounds, review the final rule, and hold it arbitrary and capricious under the Administrative Procedure Act. Thank you. Thank you.
judges: Henderson, Griffith, Pillard